ESTATE OF EDWIN E. JACK, GEORGE M. NAY AND FRANCIS P. DENNY, EXECUTORS, PETITIONERS. *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6530. Promulgated February 21, 1946.

*Oliver A. Wyman, Esq.,* and *Edward Hyde Earle, Esq.,* for the petitioners.

*Carl A. Stutsman, Esq.,* for the respondent.

242

**OPINION.**

ARUNDELL, *Judge*: The problem here is whether the estate of the decedent is entitled to a deduction for the charitable bequests under

section 812 (d) of the Internal Revenue Code. The respondent takes the position that no deduction is allowable, inasmuch as the trustees were authorized to invade the principal of the fund in behalf of the settlor's widow if the trustees, in their sole discretion, should deem it necessary for her comfort and support if they thought the income insufficient. It is asserted that this power rendered the charitable bequests too indefinite at the time of decedent's death to warrant permitting a deduction therefor.

In determining the question, we have the benefit of the decisions by the Supreme Court in *Ithaca Trust Co.* v. *United States*, 279 U. S. 151, and the more recent case of *Merchants Nat. Bank of Boston* v. *Commissioner*, 320 U. S. 256. In addition, there are numerous decisions by the Circuit Courts of Appeals and our own, all of which bear directly upon the issue. Those cases point out that the disposition of the issue as to whether or not such bequests are deductible depends, generally, upon the language of the power and the likelihood of its exercise as disclosed by the facts and circumstances of each case. *Estate of Nathan P. Cutler, Jr.*, 5 T. C. 1304.

In the *Ithaca Trust Co.* case, *supra*, where the trust indenture provided that the trustee might invade the principal of the fund for the benefit of the settlor's wife to the extent "that may be necessary to suitably maintain her in as much comfort as she now enjoys" and where the income of the trust estate, to which the settlor's wife was entitled, was more than sufficient to maintain her as required, the Court held that the standard was fixed in fact and capable of being stated in definite terms of money. In allowing the deduction, the Court went on to say that "There was no uncertainty appreciably greater than the general uncertainty that attends human affairs." In the *Merchants Nat. Bank of Boston* case, *supra*, where the trustee was authorized to use principal when the trustee in its sole discretion should deem wise and proper for "the comfort, support, maintenance, and/or happiness" of the settlor's wife and where the settlor directed a liberal exercise of the power, the Court held that the deduction was not allowable. It was pointed out in that decision that the introduction of the element of the widow's "happiness" and the instruction to the trustee to exercise its discretion with liberality to make her wishes prior to the claims of residuary beneficiaries brought into the calculation elements of speculation too large to be overcome, notwithstanding the widow's previous mode of life was modest and her own resources substantial.

The instrument here considered provides that the trustees shall pay over to the decedent's wife the entire net income of the trust and also so much of the principal thereof as they in their sole discretion deem necessary for her *comfort and support* if they think the income insuf-

ficient. The question is whether that direction provides a fixed standard capable of being stated in terms of money. We think it does. It is true that the instrument before us does not expressly limit the standard to "as much comfort as she now enjoys," as did the instrument in the *Ithaca Trust Co.* case, *supra*, but, nevertheless, the words used limit the discretion of the trustees as effectively as if there had been an express limitaton in the instrument itself. With due regard to changes in cost, the power is intended only to secure to the beneficiary the kind of living to which she was accustomed as if interpolating into the will here considered the words expressly used in the will under consideration in the *Ithaca* case, *supra*. *Hartford-Connecticut Trust Co.* v. *Eaton*, 36 Fed. (2d) 710. As pointed out by Judge L. Hand in the *Hartford-Connecticut Trust Co.* case, "while there was, of course, some latitude of choice with which the remaindermen could not interfere, the trustee was limited to the support of the widow according to her 'station in life'; that is, according to her wont."

A number of the Circuit Courts of Appeals and this Court have had occasion, before and after the Supreme Court handed down its decision in the *Merchants Nat. Bank of Boston* case, *supra*, to consider the legal effect of comparable directions and have held that the words provided a fixed standard capable of measurement. The following cases are illustrative: "Proper comfort and support," *First Nat. Bank of Birmingham* v. *Snead*, 24 Fed. (2d) 186; "Comfortable maintenance and support," *Hartford-Connecticut Trust Co.* v. *Eaton, supra;* "Comfort, maintenance and support," *Lucas* v. *Mercantile Trust Co.*, 43 Fed. (2d) 39; "Comfort and support," *Boston Safe Deposit & Trust Co. et al., Executors*, 21 B. T. A. 394; more recently, "Care, maintenance and support," *Estate of Horace G. Wetherill*, 4 T. C. 678; appeal dismissed, 150 Fed. (2d) 1019, and see the directions to trustees in *Commissioner* v. *Robertson's Estate*, 141 Fed. (2d) 855, and *Commissioner* v. *Wells Fargo Bank & Union Trust Co.*, 145 Fed. (2d) 130. When a widow has taken property under the will of her husband, "to be used and enjoyed by her for her comfort and support during her lifetime," the courts of Massachusetts have held that she took a life estate only, with limited power of disposal so far as necessary for her personal comfort and well being, but for no other purpose. Her receipts and disbursements were subject to approval by the probate court. *Allen* v. *Hunt*, 213 Mass. 276; 100 N. E. 552, and cases cited therein.

The purposes for which the principal of the trust fund could be expended by the trustees herein lend themselves to reliable prediction. Expenditures could be made only to maintain the widow at the standard of living to which she had been accustomed, and such standard is

measurable in terms of money. *First Nat. Bank of Birmingham* v. *Snead, supra,* and *Hartford-Connecticut Trust Co.* v. *Eaton, supra.*

The stipulated facts illustrate that the decedent's wife owned approximately $100,000 in securities at his death. The annual income therefrom amounted to approximately $7,000. The trust income distributable to her would amount to from $24,000 to $30,000 per annum. She was furnished a suitable dwelling in addition. It is demonstrated that her living expenses were less than $9,000 per year and that her bank account and investments were being expanded by her savings. The combined living expenses of the widow and the decedent for the two years immediately preceding his death were less than $10,000 each year. She was at the advanced age of 77 years, with a life expectancy of 5.76 years, and it can reasonably be assumed that her demands would not be great. Had her living expenses increased substantially, still she would have had adequate means of her own. The respondent does not contend that the widow's resources were inadequate for her normal needs. In these circumstances, we think there was no likelihood that the trustee would ever find it necessary to use the corpus for her support and comfort and that we are justified in concluding that it was reasonably certain that the remaindermen would come into the principal undiminished by any distribution to her. It follows that the charitable bequests constitute allowable deductions.

The recent cases, *Estate of Nathan P. Cutler, Jr., supra,* and *Estate of John W. Holmes,* 5 T. C. 1289, are distinguishable. In the *Cutler* case it was pointed out that "use and benefit" is a term of broader meaning than "comfort, maintenance and support"; that a power to "use" is a power to consume; and that there was no fixed standard of expenditure capable of being stated in terms of money. In the *Holmes* case, *supra,* it was thought the words "to properly care for and maintain" did not provide a fixed standard since the word "proper" is not one of exactitude. Even so, that case turned upon the fact that the evidence failed to establish the standard of living to which the life tenant was accustomed. Nor do we think *Estate of Charles H. Wiggin,* 3 T. C. 464, is contrary to our present holding. In that case a deduction for the charitable remainders was denied because the income of the trust approximately equaled the ordinary expenses of the life tenant and, therefore, it was not unlikely that the corpus would be invaded to provide for her "comfort and support."

Reviewed by the Court.

*Decision will be entered under Rule 50.*

MURDOCK, BLACK, DISNEY, and OPPER, *JJ.,* concur only in the result.